UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT, INC., a Washington Non-Profit Corporation; and CENTER FOR FOOD SAFETY, INC., A Washington, D.C. Non-Profit Corporation,<br><br>                    Plaintiffs,<br><br>    v.<br><br>GEORGE & MARGARET LLC, a Washington Limited Liability Company; and GEORGE DERUYTER & SON DAIRY LLC, a Washington Limited Liability Company,<br><br>                  Defendants. | NO:  13-CV-3017-TOR<br><br>ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS |

BEFORE THE COURT is Defendants' Joint Motion to Dismiss (ECF No. 26).  Also before the Court is Defendants' Motion to Strike Declarations (ECF No. 46).  These matters were heard with oral argument on June 7, 2013.  Charles M. Tebbutt, Brad J. Moore, and Elisabeth A. Holmes appeared on behalf of the

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 1

Plaintiffs.  Debora K. Kristensen, Dustin E. Yeager, Preston N. Carter, and

Mathew L. Harrington appeared on behalf of Defendants.  The Court has reviewed

the briefing and the record and files herein, had the benefit of oral argument, and is

fully informed.

BACKGROUND

Defendants are diaries housing a large number of animals, and must handle

significant amounts of manure generated by the herd.  ECF No. 25 at ¶¶ 32, 36

(First Amended Complaint).  The manure is managed in various ways, including:

transforming it into compost and selling it, applying it to agricultural fields as

fertilizer, and storing liquid manure in lagoons until it is applied to agricultural

fields.  *Id*. at ¶¶ 37-42.  Plaintiffs ("CARE") allege that manure is a solid waste

under the Resource Conservation and Recovery Act ("RCRA") because when

applied to agricultural fields at above-agronomic levels and leaked from lagoons

storing liquid manure it is discarded; thereby causing high levels of nitrates in

underground drinking water.  CARE alleges that this action is a violation of the

RCRA because (1) it causes an imminent and substantial danger to public health

and the environment (42 U.S.C. § 6972(a)(1)(B)) ; and (2) constitutes illegal open

dumping (42 U.S.C. § 6945(a)).

In March 2013, the Environmental Protection Agency ("EPA") exercised its

power under section 1431 of the Safe Drinking Water Act ("SDWA"), and entered

a Consent Order with Defendants addressing the high level of nitrates in underground drinking water.  ECF No. 26-1; *see W.R. Grace & Co. v. EPA*, 261 F.3d 330, 338-39 (3d Cir. 2001)(EPA Administrator may "take action necessary to protect the public's health from an imminent and substantial endangerment created by contaminants in a public water system or an underground source of drinking water.").  The "goal" of the Consent Order is "to achieve drinking water quality that meets the EPA maximum contaminant level ('MCL') for nitrate of 10 mg/L in the drinking water aquifer beneath and downgradient of the Dairy Facilities."  ECF No. 26-1, Appx. B at p.1.

On February 14, 2013, CARE filed the instant lawsuit alleging violations under RCRA.  ECF No. 1.  CARE was granted leave to file an Amended Complaint in April 2013.  *See* ECF No. 25.  Presently before the Court is Defendants' joint motion to dismiss[1] and motion to strike declarations.

_____

[1] CARE filed four separate lawsuits against multiple Defendants alleging identical causes of action. These cases include: *Cmty. Ass'n for Restoration of the Env't, et. al. v. Cow Palace, LLC* (13-CV-3016-TOR); *Cmty. Ass'n for Restoration of the Env't, et. al. v. George & Margaret, LLC and George DeRuyter & Sons Diary LLC* (13-CV-3017-TOR); *Cmty. Ass'n for Restoration of the Env't, et. al. v. D&A Dairy and D&A Dairy LLC* (13-CV-3018-TOR); and *Cmty. Ass'n for Restoration of the Env't et. al. v. Henry Bosma Diary and Liberty Dairy, LLC* (13-CV-3019-TOR).

DISCUSSION

## I. Defendant's Motion to Strike Declarations

Defendants ask the Court to strike declarations submitted by CARE as part of their response to Defendants' joint motion to dismiss, including: the Shaw Declaration (ECF No. 36) and the "Standing Declarations" (ECF No. 37-41). However, the Court does not rely on any of this evidence for the substance of its ruling on Defendants' joint motion to dismiss. Rather, the Court relies entirely on the Amended Complaint and additional materials appropriately incorporated by reference or a matter of judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003)(generally a court may not consider material beyond the pleadings on a 12(b)(6) motion without converting the motion to dismiss to a motion for summary judgment, however, a court may consider materials including documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice, without converting the motion). Thus, Defendants' motion to strike these exhibits is denied as moot.

///

---

All of these Defendants jointly filed the motion to dismiss addressed in this Order. However, the Court declines to consolidate the cases, and will issue a separate Order in each case. For the purposes of clarity, because the motion was "joint," Defendants are always referred to in the plural.

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 4

## II. Defendant's Joint Motion to Dismiss

### A. Standard of Review

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions. *Id*. at 678-79.  In assessing whether Rule 8(a)(2) is satisfied, the

Court first identifies the elements of the asserted claim based on statute or case

law. *Id*. at 678.  The Ninth Circuit follows the methodological approach set forth

in *Iqbal* for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more than conclusions, are
> not entitled to the assumption of truth. While legal conclusions can provide
> the framework of a complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement to relief."

*Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (*quoting Iqbal*, 129

S.Ct. at 1950).

### B. "Solid Waste" Under RCRA

"RCRA is a comprehensive statute that governs the treatment, storage, and

disposal of solid and hazardous waste… so as to minimize the present and future

threat to human health and the environment." *Meghrig v. KFC Western, Inc*., 516

U.S. 479, 483 (1996).  Under the citizen suit provision of RCRA, CARE must

establish that Defendants are contributing to the "handling, storage, treatment,

transportation, or disposal of any solid or hazardous waste which may present an

imminent and substantial endangerment to health or the environment." 42 U.S.C.

§ 6972(a)(1)(B).  CARE does not allege that the manure is hazardous waste.  Thus,

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 6

the entire focus of the Court's analysis is whether the manure is a "solid waste" within the meaning of RCRA.

Pursuant to RCRA, "solid waste" is defined as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other *discarded material*, including solid, liquid, semisolid or contained gaseous material resulting from … agricultural operations…." 42 U.S.C. § 6903(27)(emphasis added).  RCRA does not define "discarded material." However, the Ninth Circuit has defined the term, according to its ordinary meaning, as "to cast aside; reject; abandon; give up."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1041 (9th Cir. 2004)(finding grass residue was not "solid waste" under RCRA).  Further, the court in *Safe Air* found the reasoning of several extra-circuit cases persuasive in identifying whether a material qualifies as "solid waste," particularly: "(1) whether the material is 'destined for beneficial reuse or recycling in a continuous process by the generating industry itself;' (2) whether the materials are being actively reused, or whether they merely have the potential of being reused; (3) whether the materials are reused by its original owner, as opposed to use by a salvager or reclaimer."  *Id*. at 1043 (internal citations omitted). Recently, the Ninth Circuit analyzed legislative history and further concluded that "[t]he key to whether a manufactured product is a 'solid waste,' then, is whether that product 'has served its intended purpose and is no longer wanted by the

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 7

consumer.'" *Ecological Rights Foundation v. Pacific Gas and Elec. Co.*, 713 F.3d 502, 515 (9th Cir. 2013)(*citing* H.R. Rep. No. 94-1491(I) at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 6238, 6240)); *see also No Spray Coal., Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001)(finding pesticides are not "discarded" when sprayed in the air with the design of effecting their intended purpose). In *Ecological Rights*, the court found only that wood preservative that "escaped" from wooden utility poles through normal wear and tear at a certain age was not "discarded" and therefore not "solid waste;" but expressly did "not decide whether or under what circumstances PCP, wood preservative, or other material becomes a RCRA 'solid waste' when it accumulates in the environment as a natural, expected consequence of the material's intended use." *Id*. at 518.

Defendants argue that manure, used by the dairies as fertilizer, is not "discarded" and is therefore not "solid waste" within the meaning of RCRA. Instead, Defendants contend that the manure is a useful byproduct that is transformed into compost, and applied to surrounding agricultural fields as fertilizer after being stored as liquid manure in lagoons. Defendants point to RCRA's legislative history, as well as federal and state regulations,[2] to support a

---

[2] Defendants cite to EPA regulations exempting from federal waste disposal standards "agricultural wastes, including manures and crop residues, returned to the soil as fertilizers or soil conditioners." 40 C.F.R. § 257.1(c)(1).

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 8

finding that manure used as fertilizer is not "solid waste." ECF No. 26 at 8.  In

enacting RCRA, Congress found that "[a]gricultural wastes which are returned to

the soil as fertilizers or soil conditioners are not considered discarded materials in

the sense of this legislation." *See Safe Air*, 373 F.3d at 1045-46 (*citing* H.R. Rep.

No. 94-1491(I) at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 6238, 6240).  Further,

Defendants maintain that the manure is "useful" as a fertilizer, and is not

transformed into "solid waste" if it is over-applied or leaked as an unintended

consequence of its intended use. ECF No. 26 at 9; *see Oklahoma v. Tyson Foods,

Inc*., 2010 WL 653032 at *10 (finding poultry litter applied as fertilizer does not

become a "solid waste within the meaning of the RCRA when it is applied to the

normal beneficial usage for which the product was intended merely because some

aspect of the product is not fully utilized," for example if a particular material is

more than "agronomic need"); *Safe Air*, 373 F.3d at 1046 n.13 ("[t]he

determination of whether grass residue has been discarded is made independently

of how the materials are handled.").   Finally, Defendants argue that imposing

RCRA liability for the over-application or leakage of manure as "solid waste"

would lead to the "untenable result" of requiring every dairy in the nation to

operate as a sanitary landfill.  *See* 42 U.S.C.§ 6903(14)(defining an illegal "open

dump" as "any facility or site where solid waste is disposed of which is not a

sanitary landfill….").

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 9

CARE acknowledges that solid manure is used onsite as compost and sold off-site; and liquid manure is stored and then applied to fields. ECF No. 25 at ¶¶ 37-42. However, according to CARE, manure that has leaked into groundwater from the liquid manure lagoons and over-applied to fields is "discarded" because it has been abandoned and no longer serves a useful purpose. *See Zands v. Nelson*, 779 F. Supp. 1254, 1261-62 (S.D. Cal. 1991)(finding gasoline leaked from tanks at gasoline stations is a disposal of solid waste because it is no longer a useful product after it leaks into the soil, and has thus been "abandoned" via the leakage). Additionally, CARE takes issue with Defendants' contention that a useful product like manure is not transformed into solid waste when it is unintentionally leaked or allegedly over-applied. When manure is applied in quantities greater than a crop can take in, the nutrients can leach into the soil and groundwater. *See e.g., CARE v. Nelson Faria Dairy LLC*, 2011 WL 6934707 at *6-8 (E.D. Wash. 2011). In their Amended Complaint, CARE alleges that Defendants apply too much manure to their fields, as reflected by high nitrate and phosphorus testing, which is not "agronomic" as manure nutrients become ineffective when over-applied. *See* ECF No. 25 at ¶¶ 57-81. At least one court was unpersuaded by the argument Defendants advance in their motion to dismiss that animal waste was not "solid waste" under the RCRA because it was used as fertilizer. *See Water Keeper Alliance, Inc. v. Smithfield Foods, Inc*., 2001 WL 1715730 at *4-5 (E.D.N.C.

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 10

2001).  The court found that "[t]he question of whether defendants return animal

waste to the soil for fertilization purposes or instead apply waste in such large

quantities that its usefulness as organic fertilizer is eliminated is a question of

fact." *Id.* [3]

The crux of CARE's argument is that it is plausible for manure to be "solid

waste" after it has ceased to be "beneficial" or "useful" when it is over-applied to

the fields and when it has leaked away from the lagoons.  *See Water Keeper

Alliance, Inc. v. Smithfield Foods, Inc*., 2001 WL 1715730 at *4-5 (E.D.N.C.

2001).  The Court agrees.  In making this ruling, the Court does not ignore the

practical ramifications of determining when manure may become "discarded"

under RCRA after it has ceased to be "useful" or "beneficial," or when it has

---

[3] CARE also supports this argument by attaching a Complaint filed by the EPA in

*U.S. v. Seaboard Foods, LLP*, alleging that swine manure was a solid waste when

it was leaked from storage facilities and over-applied to fields.  *See* ECF No. 35-1

at ¶¶ 16-20.  However, CARE does not offer any authority allowing the Court to

consider this material on a motion to dismiss.  *See United States v. Ritchie*, 342

F.3d 903, 907-908 (9th Cir. 2003).  Moreover, while the characterization of "solid

waste" was an allegation in the EPA complaint, there is no indication that the court

ever considered the merit of the United States' assertion.

served its "intended purpose." *Safe Air*, 373 F.3d at 1042; *Ecological Rights*, 713 F.3d at 515.  Nor does the Court disregard the express finding by Congress that "[a]gricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation." *See Safe Air*, 373 F.3d at 1045-46.  However, it is equally untenable that the over-application or leaking of manure that was initially intended to be used as fertilizer can *never* become "discarded" merely because it is "unintentionally" leaked or over-applied.  CARE correctly argues that the distinguishing feature of the cases relied on by Defendants analyzed whether a certain material was "discarded" in the course of its ordinary use in amounts necessary to serve its intended purpose.  *See e.g., Ecological Rights*, 713 F.3d at 515-16 ("wood preservative that has been applied to utility poles to preserve them is being used for its intended purpose….").  In stark contrast, CARE alleges that Defendants have applied manure in amounts *beyond* what is necessary to serve as fertilizer.  *See* ECF No. 25 at ¶¶74-75.  Thus, the cases cited by Defendants are factually distinguishable from the instant case on this important point.

As aptly stated by the court in *Water Keeper*, "no blanket animal waste exception excludes animal waste from the 'solid waste' definition.  Instead, the determination of whether defendants 'return' animal waste to the soil as [fertilizer] is a functional inquiry focusing on defendants' use of the animal waste products

rather than the agricultural waste definition." *Water Keeper*, 2001 WL 1715730 at *4. It would be premature at this stage of the proceedings to dismiss this case without any argument or evidence as to whether the manure was put to its intended use and/or used for beneficial purposes by Defendants under the circumstances unique to this case. *See id.* at *4-5 ("[t]he question of whether defendants return animal waste to the soil for fertilization purposes or instead apply waste in such large quantities that its usefulness as organic fertilizer is eliminated is a question of fact."). The Court finds that the allegations in CARE's Amended Complaint state well-pleaded factual allegations that the Defendants over-applied and improperly applied manure to their fields, and allowed liquid manure to leak from lagoons, thereby "discarding" the manure and qualifying it as "solid waste" under RCRA. On this motion to dismiss, these allegations are entitled to the assumption of truth, and state a plausible claim for relief under the tenants of RCRA.

### C. Anti-Duplication Provision in RCRA

The Defendant dairies are subject to a Consent Order issued by the EPA under the SWDA.[4] ECF No. 26-1. Under terms of the Consent Order, the goal is

---

[4] Generally, a court may not consider material beyond the complaint when ruling on a 12(b)(6) motion, without converting the motion into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668,688 (9th Cir. 2001). However, the court may take judicial notice of matters of public record as long as

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 13

to "achieve drinking water quality that meets EPA maximum contaminate levels … for nitrate of 10 mg/L in the drinking water beneath and downgradient of the Diary Facilities." *Id*. at Appx. B, p.1.  Pursuant to the RCRA, "[n]othing in this chapter shall be construed to apply to … any activity or substance which is subject to … the [Safe Water Drinking Act] … except to the extent that such application (or regulation) is not inconsistent with the requirements of such Acts."  42 U.S.C. § 6905(a).

Defendants contend that this provision bars citizen suits based on activities regulated under another statute, here the SWDA,[5] in an inherently inconsistent manner.  Specifically,  Defendants argue that the instant lawsuit is an attempt by CARE to regulate the same activities (land-application and storage of manure) and

the facts are not "subject to reasonable dispute."  *Id*. at 689.  The Court takes judicial notice of the Consent Order.

[5] Defendants contend that CARE would "logically" bring this suit under the SDWA but cannot in this case because the EPA is enforcing that statute.  *See* ECF No. 26 at 13 n.3 (citing 42 U.S.C. § 300j-8(b)(barring citizen suits under the SDWA when the EPA has commenced enforcement proceedings).  Thus, according to Defendants, CARE is attempting to "shoehorn" an underground drinking water claim into the RCRA. The Court declines to consider this purely speculative argument.

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 14

the same substance (manure/nitrates) in a manner "inconsistent" with EPA regulation under the SDWA (the Consent Order), and is therefore barred by the RCRA "non-duplication" provision.  *See Coon v. Willett Dairy, LP*, 536 F.3d 171, 174 (2d Cir. 2008)(RCRA citizen suit claims based on "same activities and substances" as covered by the CWA permit); *Jones v. E.R. Snell Contractor, Inc*., 333 F. Supp. 2d 1344, 1350-51 (N.D. Ga. 2004)(pollutant at issue, stormwater runoff, was exempt from the coverage of RCRA because it was regulated by the CWA).  Thus, according to Defendants, "the only plausible reason for filing a lawsuit is to seek inconsistent relief." ECF No. 26 at 15.

CARE responds that "by its terms" 42 U.S.C. § 6905(a) does not include language referring to enforcement, and thus cannot preclude a citizen suit.  ECF No. 35 at 13-14.  Rather, CARE argues that citizen suits of this kind are only subject to limitations under 42 U.S.C. § 6972(b)(2)(A)-(C), namely: written notice and preclusion where a state or federal agency is diligently pursuing a certain judicial or administrative action.  However, Defendants do not challenge whether the instant suit is precluded under this provision.  Further, as indicated above, courts have routinely relied on 42 U.S.C. § 6905(a), also known as the "anti-duplication" provision, to analyze the viability of a citizen suit.  *See e.g., Coon ,* 536 F.3d at 174; *Jones*, 333 F. Supp. 2d at 1350-51.  CARE offers no legal authority indicating otherwise, and thus the Court finds this argument inapposite.

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 15

In fact, at least one court has allowed simultaneous RCRA and SDWA claims under the anti-duplication provision after finding there was nothing inconsistent between the requirements of the two statutes.  *Vernon Village, Inc. v.Gottier*, 755 F. Supp. 1142, 1154 (D. Conn. 1990).

Relying on *Vernon Village*, CARE argues that the broader scope of RCRA's endangerment provision, as opposed to the SDWA's narrower focus on water supplies, does not necessitate the finding that the RCRA is inconsistent with the SDWA.  The Court agrees.  "While the SDWA applies to the safety of the drinking water, RCRA is concerned with the safe treatment and disposal of hazardous substances-hazardous substances that could be contained within drinking water."  *Vernon Village*, 755 F. Supp. at 1154.  "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  *Morton v. Mancari*, 417 U.S. 535, 551 (1974)("When there are two acts upon the same subject, the rule is to give effect to both if possible….").  At this stage of the proceedings the Court finds it premature to dismiss on the basis of the anti-duplication provision without allowing discovery as to whether the substances and activities addressed in the Consent Order and the Amended Complaint are in fact inconsistent in this case.  *See Raritan Baykeeper, Inc. v. NL Indus., Inc*., No. 09-cv-4117(JAP), 2013 WL 103880 at *27 (D.N.J. Jan. 8, 2013).  It remains to be seen what remedies could be

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 16

supplemental to the Consent Order without conflict or duplication.  Thus, CARE's Amended Complaint cannot be dismissed for failure to state a claim on the basis of the RCRA anti-duplication provision.

### D. Whether Relief has Already Been Granted

Regardless of the anti-duplication provision, courts have held that citizen suits are barred if government action encompasses all relief sought in the lawsuit, and there is no injunctive relief left for the court to order.  *See e.g. 87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215, 1219-21 (S.D.N.Y. 2002)(plaintiff was unable to identify any action defendant could take to improve the situation beyond the plan already implemented by the state agency, however, deference to agency may not be required if defendant could be ordered to take action not already in place as result of agency efforts that would "improve the situation in some way"); *Clean Harbors, Inc. v. CBS Corp.*, 875 F. Supp. 2d 1311, 1330-32 (D. Kan. 2012)(RCRA citizen suit barred when injunctive relief was already in place).  Courts may base this ruling both on standing grounds and failure to state a claim when agency efforts are already underway.  *See Clean Harbors*, 875 F. Supp. 2d at 1330; *87th St. Owners*, 251 F. Supp. 2d at 1222.  However, relief may be available when a government plan does not address the same substance or activity, or where there is "ample room for injunctive relief beyond [the agency's] efforts."  *See In re MTBE Products Liability Litig.*, 476 F. Supp. 2d 275, 281-82

(S.D.N.Y. 2007); *City of Colton v. American Promotional Events, Inc*., 824 F.

Supp. 2d 1015, 1021-22 (C.D. Cal. 2011).

     The relief sought by CARE in the instant lawsuit differs with the

requirements of the Consent Order in multiple areas, including, but not limited to:

1. CARE asks that Defendants supply drinking water to residents within a three

    mile radius, as opposed to a one mile radius in the Consent Order (ECF No.

    25 at ¶I (relief requested); ECF No. 26-1, Appx. B at p.5);

2. CARE asks the Court to order Defendants to implement scientific studies

    examining the fate and transport of solid waste from the facility to the waters

    and soils of the surrounding area with the goal of remediating the

    contamination allegedly caused by Defendants, while the Consent Order

    only requires monitoring (ECF No. 25 at ¶¶ G, H, J, K; ECF No. 26-1,

    Appx. B at ¶ E);

3. CARE wants Defendants to design a program to evaluate the actual amount

    of manure necessary to provide a specific crop with its anticipated nutrient

    needs, while the Consent Order merely requires Defendants to act in accord

    with NRCS Practice Standard 590 to determine if manure was over-applied

    (ECF No. 25 at ¶ F; ECF No. 26-1, Appx. B at ¶ F.1);

4. CARE asks the Court to order that Defendants immediately line the manure

    lagoons; as opposed to the Consent Order's requirement that Defendants

submit a report to determine if the lagoons comply with legal standards

(ECF No. 25 at ¶ C; ECF No. 26-1, Appx. B at ¶ F.1.6).

5.  CARE asks that soil sampling be required down to at least a four foot level, as opposed to depths of one to three feet in the Consent Order (ECF No. 25 at ¶ G; ECF No. 26-1 at ¶¶F. 1.c, F.1.e).

Defendants argue that CARE's claims are based on the exact same problems already remedied by the EPA in the Consent Order, and that any imminent and substantial danger has been abated either by providing an alternate source of drinking water, or requiring Defendants to line the manure lagoons if they do in fact leak.  Thus, Defendants maintain that the Complaints fail to state a claim, as the relief sought has already been granted.  *See Trinity Indus. V. Chicago Bridge & Iron Co*., 867 F. Supp. 2d 754, 763-64 (W.D. Pa. 2012)(finding relief that would be available to plaintiff under RCRA had already been provided by the Consent Order, even though active cleanup of the site had not begun); *Kara Holding Corp. v. Getty Petroleum Mktg., Inc*., NO. 99 Civ. 1275(RWS), 2004 WL 1811427 at *11-12 (S.D.N.Y Aug. 12, 2004)(even though proposed remediation plan went beyond consent order, plaintiff "had not shown that the remediation plan … is necessary to insure that the petroleum contamination is no longer an imminent and substantial endangerment in light of the considerable remediation that has already taken place.").

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 19

CARE cites to the same discrepancies between the Consent Order and the relief sought in their Complaint, to argue that the instant suit does not abate the endangerment caused by the Defendants, nor does it fully encompass the relief sought by CARE.  ECF No. 35 at 17-20 (citing *In re MTBE Products Liability Litig.*, 476 F. Supp. 2d at 281-82; *City of Colton*, 824 F. Supp. 2d at 1021-22 (C.D. Cal. 2011).  Additionally, CARE argues that, despite Defendants' contentions otherwise, this lawsuit is not based solely on contamination of underground drinking water by one type of contaminant (nitrate).  The Complaint alleges contamination of surface water and soil (ECF No. 25 at ¶¶ 56, 68-73), and identifies contaminants including nitrates, phosphorus, pharmaceuticals, and heavy metals (*Id.* at ¶¶ 90, 101).[6]  Thus, CARE argues the case should not be dismissed because its scope is broader than the Consent Order, which is confined to the contamination of underground water by nitrates.  *See Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 12 (1st Cir. 2009)(collecting cases finding that a

---

[6] CARE also takes issue with Defendants' argument that the cause of action is premised on contamination of drinking water.  ECF No. 35 at 17 n.14.  Instead, CARE alleges endangerment and open dumping claims based on the mishandling of manure, which is *proven* by showing contamination of groundwater, soil and possibly drinking water.

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 20

consent order did not preclude citizen suit when consent order did not address the same contaminants and/or contemplate the same type of contamination).

As an initial matter, the Court must address Defendants' argument that CARE's notice of intent to sue ("NOI") alleges only contamination of underground drinking water, and therefore any claims as to contamination of surface water and/or contamination by pharmaceuticals, phosphorus and hard metals, is an improper attempt to expand the Complaint beyond the terms of the NOI.  ECF No. 50 at 5-8.  CARE perfunctorily argues that the NOI provided detailed information alleging violations of RCRA due to improper handling of manure, thereby contaminating groundwater, surface water, and soil.  *See* ECF No. 25-1 at 2-5.

A notice of intent to sue ("NOI") under RCRA must contain sufficient information to permit the recipient to identify the specific requirement, standard, or regulation that has been violated, the activity alleged to be in violation, and the persons responsible for the alleged violation.  40 C.F.R. § 254.3; *Brod v. Omya*, 653 F.3d 156, 166 (2d Cir. 2011)(NOI must identify specific basis for lawsuit).  Notice is sufficient where defendant "was made aware of soil and groundwater contamination and the specific compounds causing the contamination."  *Northern Cal. River Watch v. Honeywell Aerospace*, 830 F. Supp. 2d 760, 766 (N.D. Cal. 2011).  However, plaintiffs are not required to "list every specific aspect or detail of every alleged violation."  *Cmty Ass'n for Restoration of the Env't v. Henry*

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 21

*Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002); *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002)(holding  NOI "does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem.").

In this case, the primary focus of the NOI is (1) the imminent and substantial endangerment due to nitrates found in underground drinking water; and (2) improper handling of manure constitutes open dumping in violation of 42 CFR § 257.3-4(a) as shown by high levels of nitrates in the underground drinking water. ECF No. 25-1 at 2-5.  The only reference to industry-standard bovine pharmaceuticals, phosphorus, barium, and zinc is that they were found in "elevated levels." *Id*. at 3.  The only mention of surface water is potential for runoff as a result of the over-application and ponding of liquid manure. *Id*. at 2.  The NOI does note that elevated levels of nitrate were found in soil samples receiving Defendants' manure.  *Id*.  After exhaustive review of the NOI, the Court finds that CARE did not provide sufficient information as to contamination of surface water and/or contamination by pharmaceuticals, phosphorus and hard metals, to comply with the statutory RCRA notice obligation.  While the NOI did mention these substances and activities briefly, it was not enough information for Defendants to identify and correct the problem.  Thus, the Court will limit its analysis on this issue to contamination of underground drinking water by nitrates.

The Court finds that CARE's Complaint states a plausible claim for relief as to allegations regarding the contamination of underground water sources by nitrates.  In this case, CARE has identified action that could be taken by the Defendants, beyond what is required by the Consent Order, which could conceivably improve the situation.  *Cf.* 87th St., 251 F. Supp. 2d at 1219-21 (noting deference to agency may not be required if defendant could be ordered to take action not already in place as result of agency efforts that would "improve the situation in some way").  The allegations in CARE's Complaint may address the same substance and activity as the Consent Order (nitrates in underground drinking water), however, for the purposes of this motion, the Complaint sufficiently identifies "ample room for injunctive relief beyond [the agency's] efforts."  *In re MTBE Products Liability Litig*., 476 F. Supp. 2d at 281-82.  For example, CARE asks the Court to order Defendants to conduct scientific studies to remediate the contamination, instead of monitoring only; design programs to evaluate the actual amount of manure necessary to provide a specific crop with the required nutrients; and line the manure lagoons immediately instead of monitoring to determine if they comply with legal standards.  ECF No. 25 at ¶¶ C, F, G, H, J, K; ECF No. 26-1, Appx. B at ¶ E, F.1).  Thus, the Court finds that CARE's citizen suit is not barred because the Consent Order does not encompass *all* relief CARE seeks in this lawsuit, nor does it foreclose further injunctive relief as identified in the

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS ~ 23

Complaint.  Defendants' motion to dismiss for failure to state a claim must be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Joint Motion to Dismiss (ECF No. 26) is **DENIED**.

2. Defendants' Motion to Strike Declarations (ECF No. 46) is **DENIED as moot**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** June 21, 2013.

THOMAS O. RICE
United States District Judge